**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

DOUGLAS MAY,

       Plaintiff,

v.                                                                  Case No. 10-CV-13560-DT

WAL-MART STORES, INC.,

       Defendant.

_____/

**OPINION AND ORDER GRANTING DEFENDANT'S**
**"MOTION TO DISMISS PLAINTIFF'S COMPLAINT"**

Pending before the court is a "Motion to Dismiss Plaintiff's Complaint," filed by

Defendant Wal-mart Stores, Inc. ("Wal-Mart").  The matter has been fully briefed, and a

hearing is unnecessary.  *See* E.D. Mich. LR 7.1(f)(2).  For the reasons stated below, the

court will grant Defendant's motion.

**I.  BACKGROUND**

According to the Complaint, Plaintiff Douglas May was hired in 1993 to work in

the hardware department at a Wal-Mart store in Flint, Michigan.   (Compl. ¶ 4.)  On his

application he disclosed that he had a felony conviction for a drug offense.  (*Id.*)  In

1997, Plaintiff was convicted following a guilty plea of assault with intent to commit

criminal sexual conduct involving sexual penetration (Def.'s Mot. Br. 2), and placed on a

sex offender registry (Compl. ¶ 5).  Plaintiff contends that his manager was aware of

these events, but directed him to "return to work."  (*Id.*)

According to Plaintiff, in 2004 or early 2005, Wal-Mart adopted a policy of

checking the criminal background of all new applicants, and included background

checks on certain current employees as well.  (*Id.* ¶ 6.)  "Pursuant to this policy, [D]efendant Wal-Mart in April and May of 2009 investigated the plaintiff's criminal background—including the previously-known criminal allegations from 1997—and made the decision to discharge him." (*Id.*)  Wal-Mart supervisors verbally cited "gross misconduct" as the reason for the termination, but refused to provided a written statement of the reasons for discharge.  (*Id.*)

Plaintiff contends that, since 2004, Wal-Mart has checked the criminal backgrounds, and terminated, more than 800 employees found to be registered sex offenders.  (*Id.* ¶ 7)   The investigations are performed by Wal-Marts Analytical Research Center ("ARC").  While ARC has recommended the termination of over 800 registered sex offenders, it has also recommended, and Wal-Mart has agreed, to the retention of at least 25 employees found to be registered sex offenders.  (*Id.*)

After his discharge, Plaintiff filed a complaint with the Equal Employment Opportunity Commission, which issued him his right to sue letter on June 7, 2010.  (*Id.* ¶8.)  Plaintiff initiated this case pro se on September 7, 2010, alleging subject matter jurisdiction based on diversity of citizenship and federal question.  28 U.S.C. § 1331 & 1332.  The Complaint alleges four causes of action.  First, Plaintiff asserts a "Wrongful Termination" claim, contending that Defendant's decision to terminate him after knowing of he had a criminal conviction for 15 years was without cause.  (Compl. ¶ 9.) Next, Plaintiff asserts "Breach of Contract and Quasi-Contract," alleging that Defendant materially altered the pre-existing terms and conditions of employment when it instituted the new policy of conducting background checks, and the termination of Plaintiff without notice of the new policy was unlawful and in violation of the employment agreement

between the parties.  (*Id.* ¶ 10.)  Plaintiff also asserts a claim for "Employment

Discrimination—Disparate Treatment," alleging that Defendant has "discriminated in the

application of the policy [of investigating criminal backgrounds and terminating

registered sex offenders] on numerous occasions by retaining certain offenders in

employment—while discharging other similarly situated employees where the discharge

is based on the mere appearance of employee's name in such offender database."  (*Id.*

¶ 11.)  Finally, Plaintiff asserts "Employment Discrimination—Criminal Record," arguing

that the EEOC Interpretive Guidelines and state law make it unlawful to discriminate

based "solely on the presence of a criminal conviction in [the] employee's background;

and particularly so where the conviction occurred more than ten years prior to the

[termination].  The presumption of discrimination is greater where the complaining

employee or applicant is African American."  (*Id.* ¶ 12.)  Plaintiff asserts that

Defendant's decision to terminate him "was based on the presence of a criminal

conviction in his background—a criminal conviction of which [Defendant] was aware at

the time plaintiff was originally hired."  (*Id.*)

Plaintiff seeks damages in the amount of $100,000, exemplary damages and

attorney fees.  (*Id.* ¶¶ 13-15.)

## II. STANDARD

A defendant may move to dismiss a case for lack of subject matter jurisdiction.

*See* Fed. R. Civ. P. 12(b)(1).  To obtain dismissal of a case for failure to state a claim

under Federal Rule of Civil Procedure 12(b)(6), the complaint must fail to set forth

"enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v.

Twombly*, 550 U.S. 544, 570 (2007).

3

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Id.* at 555 (citations omitted). Therefore, under the pleading standard outlined in *Twombly*, the court assumes the facts recited in the complaint are true, "construe[s] the complaint in the light most favorable to plaintiff," and determines whether a plaintiff has stated a plausible claim. *Albrecht v. Treon*, 617 F.3d 890, 893 (6th Cir. 2010) (internal quotation marks and citations omitted). In application, a "complaint must contain either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory." *Eidson v. State of Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007) (citation omitted).

"In determining whether to grant a Rule 12(b)(6) motion, the court primarily considers the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, also may be taken into account." *Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001) (emphasis omitted) (quoting *Nieman v. NLO, Inc.*, 108 F.3d 1546, 1554 (6th Cir. 1997)).

### III. DISCUSSION

Defendant has moved to dismiss all four of Plaintiff's causes of action, arguing that none of them state a claim upon which relief can be granted. The court agrees.

### A. Wrongful Termination/Breach of Contract

In Plaintiff's first claim, he asserts that Defendant unlawfully terminated him "without cause" because Defendant had known about his criminal conviction for fifteen

years before terminating his employment.  Similarly, in Plaintiff's second claim, he

alleges that Defendant breached an unspecified "employment agreement" when it

changed the terms of employment by instituting a policy of investigating criminal

backgrounds and terminating registered sex offenders.  Defendant argues that these

two claims fail as a matter of law because under Michigan law Plaintiff's employment

was at will, and Defendant therefore could terminate his employment for any reason.

Plaintiff does not directly respond to Defendant's motion to dismiss these two claims,

focusing instead on the discrimination claims, and as therefore waived his opposition to

the dismissal of these claims.  *Scott v. State of Tenn.,* No. 88-6095, 1989 WL 72470, *2

(6th Cir. July 3, 1989) ("[I]f a plaintiff fails to respond or to otherwise oppose a

defendant's motion [to dismiss], then the district court may deem the plaintiff to have

waived opposition to the motion.").  Given Plaintiff's pro se status, the court will

nonetheless address these two claims on their merits and, for the reasons discussed

below, dismiss them.

"Generally, and under Michigan law by presumption, employment relationships

are terminable at the will of either party."  *Lytle v. Malady,*  579 N.W.2d 906, 910 (Mich.

1998) (citing *Lynas v. Maxwell Farms*, 273 N.W. 315 (Mich. 1937)).  This "presumption

of employment at will can be rebutted so that contractual obligations and limitations are

imposed on an employer's right to terminate employment."  *Id.* (citing *Toussaint v. Blue

Cross & Blue Shield of Michigan*, 292 N.W.2d 880 (1980).  To overcome the

presumption of employment at will, Plaintiff must establish "either a contract provision

for a definite term of employment, or one that forbids discharge absent just cause." *Id.*

(citing *Rood v. General Dynamics Corp.*, 507 N.W.2d 591 (Mich. 1993)).

Here, other than a vague reference to an "employment agreement," Plaintiff's Complaint is silent with respect to any allegations of a contractual relationship between the parties. Plaintiff does not allege that Defendant promised, orally or in writing, employment for a definite term. Plaintiff does not allege that Defendant promised, orally or in writing, termination only for just cause. Instead, Plaintiff appears to be basing his contractual claim on the fact that prior to 2004, there existed no policy of terminating employees based on their criminal convictions and that therefore Defendant's alleged failure to notify him of the change in policy regarding registered sex offenders was somehow improper. These facts do not sufficiently allege the existence of a contract, nor do these facts sufficiently allege a breach of any such contract. Michigan has held that when an employer revokes a written "discharge-for-cause policy . . . reasonable notice of the change must be uniformly given to affected employees." *In re Certified Question,* 443 N.W.2d 112, 120 (Mich. 1989). This holding, however, is limited to changes in "discharge-for-cause" policies, and does not purport to apply to every change in employment conditions. As such, even construing Plaintiff's pro se pleadings generously, the complaint fails to allege facts sufficient to assert a contractual relationship for "just cause" employment.

In Michigan, "in the absence of a contractual basis for holding otherwise, either party to an employment contract for an indefinite term may terminate it at any time for any, or no, reason." *Suchodolski v. Michigan Consol. Gas Co.,* 316 N.W.2d 710, 711 (Mich. 1982) (citing *Toussaint,* 292 N.W.2d 880). There are limited exceptions to this general rule, but Plaintiff's allegations do not fit any of the exceptions. As already stated, Plaintiff has not alleged the existence of a contractual provision for just cause

employment or for employment for a definite term. Further, Michigan courts have provided a "public policy" exception to at will employment "based on the principle that some grounds for discharging an employee are so contrary to public policy as to be actionable." *Id.* There is nothing about terminating a registered sex offender which is "so contrary to public policy at to be actionable." Indeed, "[m]ost often these [public policy] proscriptions are found in explicit legislative statements prohibiting the discharge, discipline, or other adverse treatment of employees who act in accordance with a statutory right or duty." *Id.* No such situation is alleged in the Complaint.

Fundamentally, Plaintiff appears to be asserting in his Complaint that it was unfair for Defendant to allow him to continue working despite knowledge of his criminal conviction in 1997, but then terminate him for that same criminal conviction in 2009. Even if this scenario is unfair—a proposition with which the court disagrees—it nonetheless does not create a cause of action. Under the facts as alleged by Plaintiff, his employment was at will and Defendant could terminate his employment at any time, for any reason. Accordingly, Plaintiff's first two claims, alleging wrongful termination and breach of contract, will be dismissed.

### B. Discrimination Claims

Plaintiff's two remaining claims allege that Defendant unlawfully discriminated against him when he was terminated for being a registered sex offender. Title VII provides that it is "an unlawful employment practice for an employer . . . to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).

Thus, in order to state a claim, Plaintiff must first allege that he is a member of a protected class. *See Smith v. City of Salem, Ohio*, 378 F.3d 566, 570 (6th Cir. 2004). Defendant argues that Plaintiff's two discrimination claims should be dismissed because Plaintiff has not alleged that he was discriminated against because of his status as a member of a protected class.

Registered sex offenders are not afforded protected status under Title VII. "Clearly, felony sex offenders are not a protected class under the statute." *Levine v. Walmart Stores, Inc.,* No. 4:08-CV-114, 2008 WL 203658, *2 (M.D.Pa. Jan. 23, 2008). Plaintiff concedes that "[t]o date, felons enjoy no protected status in Title VII law." (Pl.'s Resp. at 3.)  Plaintiff argues that he has alleged an "arbitrary employment and retention policy," because registered sex offenders are not treated uniformly in that while most are terminated some have been retained.  (Pl.'s Resp. at 3-4.)  Even assuming this is true, it simply does not state a claim for unlawful discrimination.  In order to plead a case for actionable employment discrimination, Plaintiff must allege that he was a member of a protected class, and was treated differently than those outside of the protected class.  While Plaintiff's Complaint contains a passing reference to him being an African American (Compl. ¶ 12), it is clear that his Complaint does not allege he was terminated due to his race.[1]  Indeed, the gravamen of Plaintiff's Complaint is that Defendant is the perceived unfairness that approximately 25 registered sex offenders

[1]If Plaintiff had attempted to bring such a claim, the court would dismiss it for failure to exhaust. *Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359 (6th Cir. 2010) (holding that plaintiffs must exhaust their individual claims with the EEOC before filing suit).  Plaintiff did not assert a race discrimination claim with the EEOC, and under *Younis*, the court would therefore require him to exhaust his claim first before filing suit in the district court.

were retained while 800 offenders were terminated.  Even if the application of this policy

was, as Plaintiff alleges, arbitrary, it is not actionable in the absence of any allegation of

discrimination against a protected class.  Defendant's motion will therefore be granted.[2]

### IV.  CONCLUSION

For the reasons discussed above, IT IS ORDERED that Defendant's "Motion to

Dismiss Plaintiff's Complaint" [Dkt. # 11] is GRANTED.


                                     S/Robert H. Cleland
                                     ROBERT H. CLELAND
                                     UNITED STATES DISTRICT JUDGE


Dated:  April 29, 2011

I hereby certify that a copy of the foregoing document was mailed to counsel of record
on this date, April 29, 2011, by electronic and/or ordinary mail.


                                     S/Lisa Wagner
                                     Case Manager and Deputy Clerk
                                     (313) 234-5522

---

[2]The court does not read Plaintiff's Complaint to assert, or even suggest, a cause
of action for disparate impact, which is an entirely separate cause of action than
disparate treatment.  *See generally Watson v. Fort Worth Bank and Trust*, 487 U.S.
977, 1002-03 (1988) (Blackmun, J., concurring) (contrasting disparate impact claims
with disparate treatment claims).  Even if Plaintiff's Complaint could be read to assert a
disparate impact claim, it would be subject to dismissal for failure to exhaust.  *Younis*,
610 F.3d at 359.  Additionally, a "[d]isparate impact analysis is used when an
employer's facially neutral policy adversely affects a protected class."  *Bacon v. Honda
of America Mfg., Inc.*, 370 F.3d 565, 576 (6th Cir. 2004) (citing *Griggs v. Duke Power
Co.*, 401 U.S. 424, 431 (1971)).  Thus, as with a disparate treatment claim, disparate
impact claims must identify a protected class, which Plaintiff fails to do.

C:\Documents and Settings\wagner\Local Settings\Temp\notesFCBCEE\10-13560.MAY.Dismiss.TitleVII.ProtectedClass.wpd